IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SCOTT N. JOHNSON,

    Plaintiff,                        No. 2:10-cv-02001 KJM[1] KJN

    v.

WASHOE MOTEL, LLC, Individually and d/b/a Washoe Motel; PINE CONE ACRE MOTEL, LLC, Individually and d/b/a Pine Cone Acre Motel,

    Defendants.                    FINDINGS AND RECOMMENDATIONS
_____/

        Presently before the court is plaintiff's motion for entry of default judgment against defendants.[2] (Dkt. No. 11.) Because oral argument would not materially aid resolution of the pending motion, this matter is submitted on the briefs and record without a hearing. See Fed. R. Civ. P. 78(b); E. Dist. Local Rule 230(g). For the reasons stated below, the undersigned recommends that plaintiff's motion for entry of default judgment be granted, that judgment be entered against defendants, and that plaintiff be awarded damages and injunctive relief.

---

[1] On January 21, 2011, United States District Judge Kimberly J. Mueller was assigned as the district judge in this action. (Order of Reassignment, Jan. 21, 2011, Dkt. No. 12.)

[2] This case was referred to the undersigned pursuant to Eastern District of California Local Rule 302(c)(19) and 28 U.S.C. § 636(b)(1).

I.     BACKGROUND

Plaintiff initiated this action on July 28, 2010, alleging violations of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101 et seq., and California's Unruh Civil Rights Act, Cal. Civ. Code §§ 51 et seq. (See generally Compl., Dkt. No. 1.) Plaintiff, who is affected by quadriplegia and uses a wheelchair and a specially configured van, alleges that defendants are entities that jointly own, operate, manage, or lease the Washoe Motel and the Pine Cone Acre Motel, a single accommodation in South Lake Tahoe, California. (Id. ¶¶ 1-2.) Plaintiff alleges that defendants are liable under the ADA and Unruh Civil Rights Act because of architectural barriers to access at the business, which consist of a lack of: properly configured, van-accessible disabled parking spaces; an accessible route; an accessible entrance; and accessibility signage and striping. (Id. ¶¶ 3, 12-20.) Plaintiff seeks statutorily authorized money damages pursuant to the Unruh Civil Rights Act and injunctive relief. (Id. at 18-19; see also Mot. for Default J. at 4-5.)

Affidavits of service filed on October 15, 2010, demonstrate that on September 14, 2010, plaintiff, through a process server, effectuated service of process on Robert M. Twomey, who is the agent for service of process for both defendants. (See Affs. of Serv., Dkt. No. 5; see also Req. for Entry of Default, Ex. A, Dkt. No. 7, Doc. No. 7-1.) On November 26, 2010, plaintiff requested that default be entered against defendants. (See Req. for Entry of Default at 1-2.) On November 29, 2010, the Clerk of Court entered the default of defendants. (Clerks Cert. of Entry of Default at 1, Dkt. No. 9.) In doing so, the Clerk of Court stated that it appeared from the record and papers on file in the action that defendants were duly served with process, but failed to appear, plead, or answer plaintiff's complaint within the time allowed by law. (Id.)

On January 8, 2011, plaintiff filed a motion for default judgment[3] against

---

[3] On December 7, 2010, United States District Judge Garland E. Burrell, Jr., who was previously assigned to this matter, ordered plaintiff to file a motion for default judgment within

defendants, and served a copy of the motion by U.S. mail on defendants' agent for service of process, Mr. Twomey.[4]  Plaintiff's motion represents that Mr. Twomey has an ownership interest in both motels at issue and at some point contacted plaintiff.  (Mot. for Default J. at 4.)  Plaintiff further represents that he informed Mr. Twomey of the "already existing Request for Clerk's Entry of Default," and that the parties "were not able to agree upon any settlement of this action."  (Id.)  A review of the court's docket reveals that defendants have not appeared in this action or filed any response to the motion for default judgment.

Plaintiff's motion for default judgment seeks statutory damages pursuant to the Unruh Civil Rights Act in the amount of $8,000, which consist of minimum statutory damages of $4,000 for each of two actual visits to the premises in question that resulted in a discriminatory events.[5]  (See Mot. for Default J. at 4.)  Plaintiff also seeks injunctive relief in the form of readily achievable property alterations that consist of providing the correct number and type of properly configured, van-accessible disabled parking spaces, an accessible route to an accessible entrance, accessibility signage and striping signage, all in accordance with the ADA and the Americans With Disabilities Act Accessibility Guidelines contained in 28 CFR Part 36.  (See id. at 4-5.)

II.     LEGAL STANDARDS

Pursuant to Federal Rule of Civil Procedure 55, default may be entered against a party against whom a judgment for affirmative relief is sought who fails to plead or otherwise defend against the action.  See Fed. R. Civ. P. 55(a).  However, "[a] defendant's default does not automatically entitle the plaintiff to a court-ordered judgment."  PepsiCo, Inc. v. Cal. Sec. Cans,

---

90 days of the date of that order.  (Order Continuing Status (Pretrial Scheduling) Conference at 1, Dkt. No. 10.)

[4] Plaintiff served his motion for default judgment on each defendant at the following address: 1340 Mt. Pisgah Road #1, Walnut Creek, California 94596.  (See Cert. of Serv., attached to Mot. for Default J.)  This is the address listed for Mr. Twomey as agent for service of process.  (See Compl., Ex. B.)

[5] Plaintiff is not seeking damages for two alleged instances of forgone visits to the accommodation over the past year.  (See Mot. for Default J. at 4; Compl. ¶3.)

238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) (citing Draper v. Coombs, 792 F.2d 915, 924-25 (9th Cir. 1986)). Instead, the decision to grant or deny an application for default judgment lies within the district court's sound discretion. Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980). In making this determination, the court considers the following factors:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Default judgments are ordinarily disfavored. Id. at 1472.

As a general rule, once default is entered, well-pleaded factual allegations in the operative complaint are taken as true, except for those allegations relating to damages. TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (per curiam) (citing Geddes v. United Fin. Group, 559 F.2d 557, 560 (9th Cir. 1977) (per curiam)); accord Fair Housing of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002). In addition, although well-pleaded allegations in the complaint are admitted by a defendant's failure to respond, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." Cripps v. Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992) (citing Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978)); accord DIRECTV, Inc. v. Hoa Huynh, 503 F.3d 847, 854 (9th Cir. 2007) (stating that a defendant does not admit facts that are not well-pled or conclusions of law); Abney v. Alameida, 334 F. Supp. 2d 1221, 1235 (S.D. Cal. 2004) ("[A] default judgment may not be entered on a legally insufficient claim."). A party's default conclusively establishes that party's liability, although it does not establish the amount of damages. Geddes, 559 F.2d at 560 (stating that although a default established liability, it did not establish the extent of the damages).

////

II.   DISCUSSION

  A. <u>Appropriateness of the Entry of Default Judgment Under the Eitel Factors</u>

    1. <u>Factor One: Possibility of Prejudice to Plaintiff</u>

The first <u>Eitel</u> factor considers whether the plaintiff would suffer prejudice if default judgment is not entered, and such potential prejudice to the plaintiff militates in favor of granting a default judgment. See <u>PepsiCo, Inc.</u>, 238 F. Supp. 2d at 1177.  Here, plaintiff would potentially face prejudice if the court did not enter a default judgment.  Absent entry of a default judgment, plaintiff would be without another recourse for recovery.  Accordingly, the first <u>Eitel</u> factor favors the entry of default judgment.

    2. <u>Factors Two and Three: The Merits of Plaintiff's Substantive Claims and the Sufficiency of the Complaint</u>

The undersigned considers the merits of plaintiff's substantive claims and the sufficiency of the complaint together below because of the relatedness of the two inquiries.  The undersigned must consider whether the allegations in the complaint are sufficient to state a claim that supports the relief sought.  See <u>Danning</u>, 572 F.2d at 1388; <u>PepsiCo, Inc.</u>, 238 F. Supp. 2d at 1175.

      a. <u>Americans with Disabilities Act</u>

Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). Discrimination includes "a failure to remove architectural barriers . . . in existing facilities . . . where such removal is readily achievable." <u>Id</u>. § 12182(b)(2)(A)(iv); <u>see also</u> <u>Chapman v. Pier 1 Imports (U.S.) Inc.</u>, slip op., ___ F.3d ___, No. 07-16326, 2011 WL 43709, at

////

////

*3 (9th Cir. Jan. 7, 2011) (en banc).[6] The ADA defines the term "readily achievable" as "easily accomplishable and able to be carried out without much difficulty or expense." 42 U.S.C. § 12181(9).[7]

"To prevail on a Title III discrimination claim, the plaintiff must show that (1) [he] is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of her disability." Molski v. M.J. Cable, Inc., 481 F.3d 724, 730 (9th Cir. 2007). Furthermore, "[t]o succeed on a ADA claim of discrimination on account of one's disability due to an architectural barrier, the plaintiff must also prove that: (1) the existing facility at the defendant's place of business presents an architectural barrier prohibited under the ADA, and (2) the removal of the barrier is readily achievable." Parr v.

---

[6] In Chapman, the en banc panel majority reiterated that "[t]he concept of 'discrimination' under the ADA does not extend only to obviously exclusionary conduct—such as a sign stating that persons with disabilities are unwelcome or an obstacle course leading to a store's entrance. Rather, the ADA proscribes more subtle forms of discrimination—such as difficult-to-navigate restrooms and hard-to-open doors—that interfere with disabled individuals' 'full and equal enjoyment' of places of public accommodation." Chapman, 2011 WL 43709, at *2.

[7] Section 12181(9) lists several factors to be considered in determining whether an action is readily achievable:

> (A) the nature and cost of the action needed under this chapter;
>
> (B) the overall financial resources of the facility or facilities involved in the action; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such action upon the operation of the facility;
>
> (C) the overall financial resources of the covered entity; the overall size of the business of a covered entity with respect to the number of its employees; the number, type, and location of its facilities; and
>
> (D) the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity; the geographic separateness, administrative or fiscal relationship of the facility or facilities in question to the covered entity.

42 U.S.C. § 12181(9)(A)-(D).

1  L & L Drive-Inn Rest., 96 F. Supp. 2d 1065, 1085 (D. Haw. 2000); accord Hubbard v. 7-Eleven,
2  Inc., 433 F. Supp. 2d 1134, 1138 (S.D. Cal. 2006).

3  Although "[t]he Ninth Circuit has yet to rule on whether the plaintiff or defendant
4  bears the burden of proof in showing that removal of an architectural barrier is readily
5  achievable," various district courts within this Circuit have applied the burden-shifting
6  framework set forth in Colorado Cross Disability Coalition v. Hermanson Family, Ltd., 264 F.3d
7  999 (10th Cir. 2001).[8]  Vesecky v. Garick, Inc., No. CV 07-1173-PHX-MHM, 2008 WL
8  4446714, at *2-*3 (D. Ariz. Sept. 30, 2008) (unpublished) (collecting cases).[9]  In Colorado
9  Cross, the Tenth Circuit Court of Appeals stated that the "[p]laintiff bears the initial burden of
10 production to present evidence that a suggested method of barrier removal is readily achievable"
11 and that if plaintiff meets that burden, the burden shifts to the defendant, who "bears the ultimate
12 burden of persuasion regarding its affirmative defense that a suggested method of barrier removal
13 is not readily achievable."[10]  Colo. Cross Disability Coal., 264 F.3d at 1006.

14 In Molski v. Foley Estates Vineyard and Winery, LLC, 531 F.3d 1043 (9th Cir.

---

[8] The Eleventh Circuit Court of Appeals adopted the Colorado Cross burden-shifting framework in Gathright-Dietrich v. Atlanta Landmarks, Inc., 452 F.3d 1269, 1274 (11th Cir. 2006).

[9] In Vesecky, the district court stated that the Ninth Circuit "applied *Colo. Cross* without much discussion" in Doran v. 7-Eleven, Inc., 506 F.3d 1191, 1202 (9th Cir. 2007) (per curiam), withdrawn, 524 F.3d 1034 (9th Cir. 2008). Vesecky, 2008 WL 4446714, at *3. Although the opinion in Doran cited by the district court in Vesecky was subsequently withdrawn and superseded on rehearing, the portion of the opinion relied on by the court in Vesecky was not altered in the subsequently entered opinion in Doran. See Doran v. 7-Eleven, 524 F.3d 1034, 1047-48 (9th Cir. 2008).

[10] Circuit courts that have applied a burden-shifting framework to determine whether a suggested method of barrier removal is readily achievable have disagreed about the quantum of evidence that a plaintiff must produce in order to meet his initial burden of production. Compare Colo. Cross Disability Coal., 264 F.3d at 1009 (requiring that plaintiff produce evidence, including evidence that a "specific design" is readily achievable and "precise cost estimates," to meet his initial burden of production), with Roberts v. Royal Atl. Corp., 542 F.3d 363, 373 & n.6 (2d Cir. 2008) (rejecting the Colorado Cross standard and requiring only that plaintiff articulate a "plausible proposal for barrier removal"), cert. denied, 129 S. Ct. 1581 (2009). The undersigned need not address this difference in the case law on plaintiff's motion for default judgment, where the allegations in the operative complaint are, as a general matter, taken as true.

2008), the Ninth Circuit Court of Appeals directly addressed Colorado Cross for the first time. The court declined to apply Colorado Cross's burden-shifting framework in the context of barrier removal from within historic buildings and instead placed the burden squarely on the defendant.[11] The court reasoned that by requiring "the entity undertaking alterations [to] consult with the State Historic Preservation Officer," the ADA guidelines for historic buildings place the burden on the "party with the best access to information regarding the historical significance of the building" rather than "on the party advocating for remedial measures."[12]  Molski, 531 F.3d at 1048.

        In Vesecky v. Garick, a recent unpublished decision from the District of Arizona addressing both Colorado Cross and Molski, the court stated that while it was "mindful of the informational imbalance that may exist between plaintiffs and defendants with respect to the ease and cost with which architectural barriers may be removed . . . until the Ninth Circuit provides additional and specific instruction to the lower courts [it] will follow the overwhelming majority of federal courts that apply the burden-shifting framework of Colo. Cross, specifically in cases where a historic building is not at issue." Vesecky, 2008 WL 4446714, at *2.  The undersigned agrees that the Molski decision turned to a large extent on designation of the facility at issue as a historical landmark, which triggered peculiar compliance requirements found in the ADA regulations.  Accordingly, the undersigned will apply the burden-shifting framework in this case, which does not involve a historical landmark.

---

[11] Although the Ninth Circuit Court of Appeals declined to apply the Colorado Cross burden-shifting framework in Molski v. Foley Estates Vineyard and Winery, the Court of Appeals has favorably cited Colorado Cross elsewhere.  In Lentini v. California Center for the Arts, 370 F.3d 837, 845 (9th Cir. 2004), the Court of Appeals cited Colorado Cross for the proposition that whether a modification order will "fundamentally alter" a service or facility under Title III of the ADA is an affirmative defense.  The court in Colorado Cross supported its holding that whether removal of an architectural barrier is readily achievable under Title III of the ADA is an affirmative defense, and its resulting application of a burden-shifting test, by analogizing to the affirmative defense under the ADA's fundamental alteration provision. 264 F.3d at 1003-04.  The Lentini decision at least suggests that the Ninth Circuit Court of Appeals is not altogether hostile to the reasoning that gave rise to the Colorado Cross burden-shifting test.

[12] The court also stated that "congressional intent behind the ADA support[s] placing the burden of production on the defendant." Molski, 531 F.3d at 1048.

Here, plaintiff alleges (1) that he is disabled (Compl. ¶ 1); (2) that defendants' business, i.e., the jointly run motel, is a place of public accommodation (id. ¶ 2); (3) that plaintiff was denied access to defendants' business because of plaintiff's disability (id. ¶ 3); and (4) that defendant's business contains specified architectural barriers (id.). Additionally, although plaintiff does not specifically allege that removal of the particular barriers at issue here is readily achievable, he alleges that "[a]mong the specific prohibitions against discrimination [in the ADA includes]: . . . A failure to remove architectural barriers and communication barriers that are structural in nature, in existing facilities [is a violation of the ADA] where such removal is readily achievable." (Id. ¶ 16.) Plaintiff's complaint also specifically states that he seeks injunctive relief to require defendants to "remove all barriers to access which are readily achievable." (Id. ¶ 3; accord Mot. for Default J. at 4 ("Plaintiff only seeks injunctive relief to the extent that the property alterations are readily achievable.") Thus, the injunction would only require defendant to remove architectural barriers where it is readily achievable. Because plaintiff's allegations are taken as true on default, the undersigned concludes that plaintiff has met his initial burden to state a prima facie Title III discrimination claim.

          b.      <u>Unruh Civil Rights Act</u>

The Unruh Civil Rights Act provides: "All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, marital status, or sexual orientation are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51(b). Generally, to prevail on his disability discrimination claim under the Unruh Civil Rights Act, plaintiff must establish that: (1) he was denied the full and equal accommodations, advantages, facilities, privileges, or services in a business establishment; (2) his disability was a motivating factor for the denial; (3) defendants denied plaintiff the full and equal accommodations, advantages, facilities, privileges, or services; and (4) defendants' wrongful conduct caused plaintiff to suffer injury, damage, loss, or harm.

See Cal. Civil Jury Instructions (BAJI), No. 7.92 (Fall 2010 ed.). As provided by statute, a violation of the ADA also constitutes a violation of the Unruh Civil Rights Act. Cal. Civ. Code § 51(f); see also Munson v. Del Taco, Inc., 46 Cal. 4th 661, 664, 208 P.3d 623, 624 (2009).

Here, because plaintiff's complaint properly alleges a prima facie claim under the ADA, plaintiff has also properly set out the necessary elements for his Unruh Civil Rights Act claim. Accordingly, the second and third Eitel factors favor the entry of a default judgment.

### 3. Factor Four: The Sum of Money at Stake in the Action

Under the fourth factor cited in Eitel, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." PepsiCo, Inc., 238 F. Supp. 2d at 1177; see also Philip Morris USA, Inc. v. Castworld Prods., Inc., 219 F.R.D. 494, 500 (C.D. Cal. 2003). Here, plaintiff seeks only the statutory minimum damages under the Unruh Civil Rights Act for two acts of discrimination, i.e., $8,000. Plaintiff's request for statutory damages is tailored to defendants' specific wrongful conduct, and the statutes involved contemplate such an award.[13] Under these circumstances, the undersigned concludes that this factor favors the entry of default judgment.

### 4. Factor Five: The Possibility of a Dispute Concerning Material Facts

The facts of this case are relatively straightforward, and plaintiff has provided the court with well-pleaded allegations and supporting documentation supporting his claims. Here, the court may assume the truth of well-pleaded facts in the complaint (except as to damages) following the clerk's entry of default and, thus, there is no likelihood that any genuine issue of material fact exists.[14] See, e.g., Elektra Entm't Group Inc. v. Crawford, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the

---

[13] Indeed, according to his motion for default judgment, plaintiff could also seek actual damages, attorney's fees, and statutory damages for additional acts of discrimination, but has chosen only to seek $8,000 in minimum statutory damages and injunctive relief.

[14] Defendants' failure to file an answer in this case despite proper service of process further supports the conclusion that the possibility of a dispute as to material facts is minimal.

10

court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists."); accord Philip Morris USA, Inc., 219 F.R.D. at 500; PepsiCo, Inc., 238 F. Supp. 2d at 1177.

     5.  Factor Six: Whether the Default Was Due to Excusable Neglect

    Upon review of the record before the court, the undersigned finds that the default was not the result of excusable neglect. See PepsiCo, Inc., 238 F. Supp. 2d at 1177. Defendants have had ample notice of this lawsuit. Plaintiff properly served defendants' agent for service of process, Mr. Twomey, who also purportedly has an ownership interest in the motels. Plaintiff also served defendants by mail with notice of its motion for default judgment. Furthermore, at some point Mr. Twomey contacted plaintiff, and plaintiff notified Mr. Twomey of the request for entry of default that was pending. Despite ample notice of this lawsuit and plaintiff's intention to seek a default judgment, defendants have not appeared in this action to date and have done nothing to defend themselves. Thus, the record suggests that defendants have chosen not to defend themselves in this action, and not that the default resulted from any excusable neglect. Accordingly, this Eitel factor favors the entry of a default judgment.

     6.  Factor Seven: The Strong Policy Underlying the Federal Rules of Civil Procedure Favoring Decisions on the Merits

    "Cases should be decided upon their merits whenever reasonably possible." Eitel, 782 F.2d at 1472. However, district courts have concluded with regularity that this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action. PepsiCo, Inc., 238 F. Supp. 2d at 1177; see also Craigslist, Inc. v. Naturemarket, Inc., 694 F. Supp. 2d 1039, 1061 (N.D. Cal. 2010); ACS Recovery Servs., Inc. v. Kaplan, No. C 09-01304, 2010 WL 144816, at *7 (N.D. Cal. Jan. 11, 2010) (unpublished); Hartung v. J.D. Byrider, Inc., No. 1:08-cv-00960 AWI GSA, 2009 WL 1876690, at *5 (E.D. Cal. June 26, 2009) (unpublished). Accordingly, although the undersigned is cognizant of the policy in favor of decisions on the merits—and consistent with existing policy would prefer that this case be

resolved on the merits—that policy does not, by itself, preclude the entry of default judgment.

Upon consideration of the Eitel factors, the undersigned concludes that plaintiff is entitled to the entry of default judgment against defendants and recommend the same. What remains is the determination of the amount of damages to which plaintiff is entitled.

B.   Terms of the Judgment to Be Entered

After determining that a party is entitled to entry of default judgment, the court must determine the terms of the judgment to be entered. Considering plaintiff's briefing and the record in this case, the undersigned concludes that plaintiff is entitled to an award of statutory damages in the amount of $8,000. The Unruh Civil Rights Act provides for, among other things, a minimum statutory damage amount of $4,000 per violation. Cal. Civ. Code § 52(a). Plaintiff seeks $8,000 in damages for violation of the Unruh Civil Rights Act based on two actual visits to defendants' property. (Pl.'s Mot. for Default J. at 4.) The court recommends that plaintiff be awarded those statutory damages. In addition, because plaintiff satisfactorily alleged his ADA claim, the undersigned will recommend that the plaintiff be granted injunctive relief, as described below, to remedy the identified architectural barriers to the extent they are readily achievable.

III.   CONCLUSION

For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion for default judgment (Dkt. No. 11) be granted.

2. Judgment be entered against the following defendants: Washoe Motel, LLC, individually and doing business as Washoe Motel; and Pine Cone Acre Motel, LLC, individually and doing business as Pine Cone Acre Motel.

3. Plaintiff be awarded statutory damages in the amount of $8,000.00.

4. Plaintiff be granted an injunction requiring defendants to provide readily achievable property alterations that consist of providing the correct number and type of properly configured, van-accessible disabled parking spaces, an accessible route to an accessible entrance, accessibility signage and striping signage, all in accordance with the Americans With Disabilities

Act of 1990 and the Americans With Disabilities Act Accessibility Guidelines contained in 28 CFR Part 36.

        5.        The Clerk of Court be directed to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Id.; see also E. Dist. Local Rule 304(b). Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed with the court and served on all parties within fourteen days after service of the objections. E. Dist. Local Rule 304(d). Failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

        IT IS SO RECOMMENDED.

DATED: February 7, 2011

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE